# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| LORI McCARTY,<br><br>    Plaintiff,<br><br>v.<br><br>EXELON CORPORATION,<br><br>    Defendant. | Civil Action No. TDC-18-1944 |

## MEMORANDUM OPINION

Plaintiff Lori McCarty has filed a civil action against Defendant Exelon Corporation ("Exelon") alleging that it has improperly calculated the amount of pension benefits that she is due under her former husband's pension plan as a surviving spouse. In her Complaint filed in the Circuit Court for Calvert County, Maryland, McCarty seeks a declaratory judgment on the amount of benefits she is due and an order instructing Exelon to pay her the past benefits she is owed and the correct amount of benefits going forward. Exelon removed the action to this Court, on the grounds that McCarty's claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (2012). Pending before the Court is Exelon's Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

McCarty was previously married to Jeffrey Gill Denton, Sr., who was employed by the Baltimore Gas & Electric Company. Through that employment, Denton received a pension administered by Exelon ("the Plan"). When McCarty and Denton divorced in 1995, the Circuit

Court for Calvert County ordered that McCarty would receive a portion of Denton's pension benefits as a surviving spouse should Denton predecease her, pursuant to a Qualified Domestic Relations Order ("QDRO") that followed their Voluntary Separation and Property Settlement Agreement.

Denton died in November 2016. When McCarty did not receive any Plan benefits from Exelon, she contacted it in March 2017 regarding the benefits owed to her under the QDRO. On June 22, 2017, Exelon sent McCarty a letter informing her of the amount of benefits she would receive based on its interpretation of the Plan and the QDRO. Exelon also told McCarty that she would not receive benefits until July 2017, eight months after Denton's death. McCarty disagreed with Exelon's calculation. While McCarty claims that she and her attorney "attempted to remedy the situation with Defendant's representatives to no avail," she does not state that she pursued Exelon's administrative review process for adjudicating disputes over benefit claims. Compl. ¶ 10, ECF No. 1-3. She asserts that she has not received any Plan benefits from Exelon.

On May 18, 2018, McCarty filed suit against Exelon in the Circuit Court for Calvert County, requesting a declaratory judgment on the amount of benefits she is due under the Plan and the QDRO, an order requiring Exelon to pay her all past benefits due and all future benefits in accordance with the court's determination, and attorney's fees. On June 27, 2018, Exelon removed the action to this Court on the basis of federal question jurisdiction.

**DISCUSSION**

In its Motion, Exelon seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Exelon argues that the Complaint was properly removed to federal court because McCarty's state court claim was preempted by ERISA. Second, it asserts that the Complaint must be dismissed because McCarty has not exhausted her administrative remedies, as

2

required by ERISA. McCarty, who was represented by counsel in the state court proceeding but is self-represented in this Court, was informed of her right to respond to Exelon's Motion but did not file an opposing brief.

## I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The Court will consider the excerpts of the Plan that were attached to Exelon's Motion to Dismiss, since it is central to the allegations made in McCarty's complaint and because McCarty, though given the opportunity to do so, has not disputed its authenticity.

## II. Preemption

Generally, the "well-pleaded complaint" rule requires that a state court complaint allege a federal claim on its face to be removed by a defendant to federal court pursuant to the federal removal statute, 28 U.S.C. § 1441(a) (2012). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207

(2004). However, where a federal statute completely preempts a state law claim by "wholly displac[ing] the state law cause of action," the cause of action "is in reality based on federal law," and the defendant may remove the action to federal court. *Id.* at 207–08. ERISA is one statute with such preemptive power, because it creates a "uniform regulatory regime over employee benefit plans" by providing both "substantive regulatory requirements" and remedial procedures for disputes under employee benefit plans. *Id.* at 208. Accordingly, ERISA specifically provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," except when the state law "regulates insurance, banking, or securities." 29 U.S.C. § 1144(a)–(b).

Part of ERISA's comprehensive regulatory scheme is an "integrated enforcement mechanism," which is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Davila*, 542 U.S. at 208; *see* 29 U.S.C. § 1132. ERISA therefore provides that an employee benefit plan participant or beneficiary may bring a civil action "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

Specifically, under ERISA's preemption clause, a state law "relat[ing] to" an employee benefit plan is preempted. 29 U.S.C. § 1144. In addition to state statutes, "state common law claims fall within the category of state laws subject to ERISA preemption." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001). State law claims are preempted by ERISA when the claim is "premised on" an employee benefit plan, in that "in order to prevail, a plaintiff

must plead, and the court must find, that an ERISA plan exists," or when the state law claim "conflicts directly with an ERISA cause of action." *Id.* at 378 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140, 142 (1990)). To make such a finding, the court considers the factual underpinnings of the state law claim rather than relying on the plaintiff's characterization of it. *Id.* at 379.

McCarty's Complaint characterizes her claim as seeking a declaratory judgment regarding the meaning and proper interpretation of a QDRO issued by a state court. However, in substance, she asserts that she is due benefits under the Plan, and she seeks "to recover benefits" that Exelon should have paid her under the Plan and "to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Therefore, McCarty's claim both depends on the existence of the Plan, because to interpret the QDRO this Court must find the existence of Exelon's ERISA plan, and "conflicts directly" with an ERISA cause of action, since the relief she seeks overlaps with the remedies provided by Congress in § 1132(a). *Griggs*, 237 F.3d at 378. McCarty's state common law claims are thus preempted by ERISA, and Exelon properly removed this action to federal court pursuant to federal question jurisdiction. *See Davila*, 542 U.S. at 207.

### III. Exhaustion of Administrative Remedies

Having concluded that McCarty's claims were properly removed to federal court, the Court will address Exelon's argument in favor of dismissal. ERISA requires employee benefit plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133. In light of this requirement and ERISA's "apparent intent" to "minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement," courts have required ERISA claimants to exhaust those internal administrative

claim procedures before filing suit in federal court. *Makar v. Health Care Corp. of Mid-Atl.*, 872 F.2d 80, 82–83 (4th Cir. 1989); *see Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). The exhaustion requirement ensures that the parties develop the factual record and that the plan has the opportunity to correct errors efficiently. *Makar*, 872 F.2d at 83. The administrative remedies are viewed as part of a "single scheme" that provides ERISA claimants both administrative and judicial review of their claims. *White v. Sun Life Assurance Co.*, 488 F.3d 240, 247 (4th Cir. 2007), *abrogated on other grounds by Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013). Although a failure to exhaust administrative remedies is an affirmative defense, *see Leach v. Aetna Life Ins. Co.*, No. 13-2757, 2014 WL 470064, at *6 (D. Md. Feb. 5, 2014), a court may address a defendant's argument that the plaintiff has failed to exhaust administrative remedies when resolving a motion to dismiss under Rule 12(b)(6). *See Hickey v. Dig. Equip. Corp.*, 43 F.3d 941, 945 (4th Cir. 1995) (affirming the district court's dismissal of a complaint on the grounds that plaintiffs had failed to exhaust administrative remedies); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992) (affirming a district court dismissal of an ERISA claim where "Plaintiff did not allege anything about whether she pursued any available relief under the claims procedures terms of [the] employee benefits plan"); *Makar*, 872 F.2d at 83.

Here, the Plan provides that any "distributee who believes he or she is entitled to benefits in an amount greater" than already received "may file a claim with the Plan Administrator." Pension Plan § 6.5, Def.'s Mot. Dismiss Ex. C, ECF No. 24-4. The Plan Administrator must review the claim and provide the distributee notice of its decision within 90 days. *Id.* The notice must inform the distributee of the right to appeal the Plan Administrator's determination to the Chief Human Resources Officer within 60 days. *Id.* On appeal, the officer will review the claim and issue a decision within 60 days. *Id.* The distributee may then seek review of the officer's

decision in federal court so long as the claim is filed within one year of the officer's decision. *Id.* § 8.10, Def.'s Mot. Dismiss 9, ECF No. 24-1.

Exelon argues that since McCarty never filed a claim with a Plan Administrator, she has not exhausted her administrative remedies. While McCarty states that she has "attempted to remedy the situation with Defendant's representatives to no avail," Compl. ¶ 10, she has not alleged that she pursued the administrative procedures set forth in the Plan and has not brought to the Court's attention any attempts to do so. *Cf. Emrit v. Nat'l Insts. of Health*, 157 F. Supp. 3d 52, 55 (D.D.C. 2016) ("The plaintiffs have not refuted, and thus have conceded, that they did not exhaust their administrative remedies under the FTCA prior to filing suit."). Therefore, McCarty's claim in this Court must be dismissed for failure to exhaust the administrative remedies available to her under the Plan.

However, as Exelon has acknowledged in its brief, because McCarty has not yet filed an administrative claim with Exelon, those remedies remain available to her. McCarty may still file a claim with a Plan Administrator and, if necessary, file an appeal within the deadlines set out in the Plan. After receiving the Chief Human Resources Officer's decision, if she remains dissatisfied with the determination, McCarty would have one year, under the Plan and by law, to re-file her claim in federal court. Pension Plan § 8.10; *see* 29 U.S.C. § 1132. Moreover, by the agreement of the parties during the October 17, 2018 Case Management Conference, the time within which McCarty must file a federal claim has been tolled from October 17, 2018 to the date of this Memorandum Opinion and Order. *See* 10/18/18 Order, ECF No. 20. Accordingly, because McCarty may still take advantage of the administrative remedies available to her under the Plan, her claims in this Court will be dismissed without prejudice.

7

## CONCLUSION

For the foregoing reasons, Exelon's Motion to Dismiss will be GRANTED. The Complaint will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: May 3, 2019

　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　THEODORE D. CHUANG
　　　　　　　　　　　　　　United States District Judge